## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **EUGENE BRZOZOWSKI,** | : | |
| 419 East Fourth St. | : | |
| Delphos, OH 45833 | : | Case No.: 3:19-cv-523 |
| | : | |
| **Plaintiff, for himself and all others** | : | JUDGE |
| **similarly situated,** | : | |
| | : | MAGISTRATE JUDGE |
| vs. | : | |
| | : | |
| **PRATT INDUSTRIES, INC.** | : | **Jury Demand Endorsed Hereon** |
| c/o Statutory Agent | : | |
| Corporation Service Company | : | |
| 50 West Broad St., Suite 1330 | : | |
| Columbus, OH 43215 | : | |
| | : | |
| and | : | |
| | : | |
| **PRATT PAPER (OH), LLC,** | : | |
| c/o Statutory Agent | : | |
| Corporation Service Company | : | |
| 50 West Broad St., Suite 1330 | : | |
| Columbus, OH 43215 | : | |
| | : | |
| **Defendants.** | | |

## COMPLAINT

NOW COME Plaintiff Eugene Brzozowski ("Plaintiff"), on behalf of himself and all others

similarly situated, and proffer this Complaint for damages against Defendant Pratt Industries, Inc.

and Defendant Pratt Paper (OH), LLC ("Defendants").

## JURISDICTION AND VENUE

1.      This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §201, *et seq*., and the Ohio Revised Code § 4123.90.

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiffs' claims arising under the law of the United States and over actions to secure equitable and other relief.

3.      This Court has jurisdiction over Plaintiffs' claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4.      Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendants in the Northern District of Ohio, and Defendants are doing and have done substantial business in the Northern District of Ohio.

## THE PARTIES

5.      Plaintiff Eugene Brzozowski is an individual, a United States citizen, and a resident of the state of Ohio.  Plaintiff Brzozowski resides in Allen County, Ohio.

6.      At all times relevant herein, the Plaintiff was an employee of Defendants' as that term is defined in the FLSA and R.C. § 4123.01.

7.      Defendant Pratt Paper (OH), LLC is a foreign Limited Liability Company registered to do business in Ohio and conducting business in Auglaize County in the Northern District of Ohio.

8.      Defendant Pratt Industries, Inc. is a foreign corporation registered to do business in Ohio and conducting business in Auglaize County in the Northern District of Ohio.  Defendant Pratt Industries, Inc.'s corporate office is located in Conyers, Georgia.

9.      At all times relevant herein, Defendants were covered employers as that term is defined in the FLSA and R.C. § 4123.01.

10.     At all times relevant to this action, Defendants were engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants' constituted an enterprise engaged in commerce within the meaning of the FLSA.

11.     Plaintiff brings this action on his own behalf and on behalf of those similarly situated, and Plaintiff has given written consent to bring this action to collect unpaid overtime and other unpaid compensation under the FLSA. The consent is filed along with the Complaint pursuant to 29 U.S.C. § 216(b).  (Attached as Exhibit A).

## FACTUAL BACKGROUND

**Defendants' Business & Pay Practices**

12.     Defendants are in the business of a recycling and is one of the largest recycled paper and packaging companies in the United States.

13.     Upon information and belief, Defendant Pratt Industries, Inc. owns and operates paper mills in: Conyers, Georgia; New York City, New York; Valparaiso, Indiana, and; Shreveport, Louisiana.

14.     In or around early 2018, Defendants began construction of a new paper mill in Wapakoneta, Ohio.

15.     Defendants employ Production Engineers at each of the paper mills.

16.     Production Engineers are responsible for the operation of the paper machines in the mills, which often involves significant manual labor to ensure the machines are functioning properly.

17.     Upon information and belief, Defendants employ approximately 15 Production Engineers on 4 different shifts at each of its paper mills.

18.     Prior to officially beginning their employment at the paper mills, Production Engineers are required to undergo mandatory training, referred to as "bootcamp."

19.     Bootcamp runs approximately 10 hours per day, four days per week (Monday through Thursday).  This time consists of both 1) classroom instruction, and 2) on-the-job training.

20.     At the end of each day, Production Engineers are assigned mandatory "homework" assignments to be completed by the following day.  On Thursdays, Production Engineers are assigned homework to complete over the weekend and have prepared for Monday's session.

21.     Homework assignments include completing worksheets, reading from text books, drawing diagrams, and studying for quizzes and examinations, among other things.

22.     Further, Production Engineers were required to attend a mandatory math class two evenings a week if they failed to demonstrate sufficient mathematical skills.  Production Engineers were required to complete homework assignments for the math classes.

23.     The abovementioned homework all occurred outside of regular working hours— i.e., in the evenings and on the weekends.

24.     Participation in training and homework completion is not voluntary.

25.     Homework is mandatory.  Production Engineers who fail to complete homework assignments or fail examinations face discipline—up to and including termination.

26.     At all times relevant herein, Defendants compensates their Production Engineers on an hourly basis.

27.     Production Engineers are compensated for time spent in the 10 hours of bootcamp, four days per week, for a total of 40 hours per week.  Production Engineers are not compensated at any rate for any of the time spent completing mandatory homework.

**Named Plaintiff's Experience**

28.     Plaintiff Brzozowski was hired by Defendants in late October 2018.

29.     Plaintiff Brzozowski began his bootcamp training on or around October 29, 2018. Plaintiff Brzozowski was told that his training would last 19 weeks and would take place in Defendants' paper mill in Valparaiso, Indiana.

30.     Plaintiff attended his first week of training in the new paper mill in Wapakoneta, Ohio, which was not yet fully operational.  Plaintiff was not assigned any homework during his first week of training.

31.     Plaintiff's second week of training took place in Defendants' paper mill located in Valparaiso, Indiana.  This mill was approximately a three-hour drive from Plaintiff's home.

32.     Plaintiff attended bootcamp with approximately 25 other Production Engineer-Trainees.

33.     Bootcamp was led by instructor Jay Hennessey.

34.     Plaintiff and the other Production Engineers were paid on an hourly basis at a rate of $26.44 for 40 hours per week during training.

35.     Plaintiff and the other Production Engineers were required to attend bootcamp 4 days per week.

36.     Once "bootcamp" began, Plaintiff and the other Production Engineers drove from their homes to the Valparaiso, Indiana plant on Monday mornings.  Plaintiff and the Production Engineers were paid for this drive time.

37.     The times of each training session varied.  Typically, Monday sessions began at 8:30 a.m.  Following the conclusion of Monday's session, Plaintiff and the Production Engineers

5

were assigned homework, as described herein, that was required to be completed before class the following morning. The homework assigned typically took between 2 and 4 hours to complete.

38.     Typically, Tuesday, Wednesday, and Thursday sessions began at 7:00 a.m. Again, after each session, Plaintiff and the Production Engineers were assigned homework assignments that were required to be completed prior to the next session. Homework on Tuesday and Wednesday evenings typically took between 2 and 4 hours to complete.

39.     Plaintiff and the Production Engineers were assigned approximately 10 hours of homework to complete after Thursday's class over the weekend. The homework was required to be completed prior to Monday's session.

40.     Plaintiff and the Production Engineers spent more than 10 hours studying over the course of a weekend if they had an exam the following week.

41.     Plaintiff and the Production Engineers were not paid for any of their time spent completing homework outside of the training sessions.

42.     Defendants were aware that Plaintiff and the Production Engineers were required to complete homework assignments, but they were not paid for this compensable time.

43.     Plaintiff and the Production Engineers were told that they could only report working 40 hours per week, regardless of the time spent actually performing work either in the plant or doing homework outside of the sessions.

44.     Lead instructor Jay Hennessey informed Plaintiff and the other Production Engineer that this was because Defendants were provided with a grant from the United States Government to cover the cost of the training, and Defendants could not afford to pay Production Engineers for work performed in excess of 40 hours per week.

45.     Defendants knowingly failed to compensate Plaintiff and Production Engineers for approximately 20 hours per week, each, of compensable overtime.

**Plaintiff Brzozowski's Injury & Termination**

46.     On or around January 4, 2019, Plaintiff and several other Production Engineers were removed from bootcamp and placed on a shift in the Valparaiso, Indiana paper mill.

47.     Plaintiff successfully performed the job duties of a Production Engineer until he sustained an injury to his bicep in late January 2019.

48.     On or around Saturday, January 26, 2019, during his shift, Plaintiff Brzozowski felt a sharp strain in his bicep after he removed a heavy box off a pallet in the mill.

49.     Plaintiff Brzozowski informed the supervisor on duty, Brian Maddox-Lee, and another Production Engineer, Paul Reed, of his injury.

50.     Plaintiff rested his arm over the weekend and returned to work for his next shift on Monday, January 28, 2019.  This shift began at 7 p.m. and lasted until 7 a.m.

51.     Approximately halfway through his shift on January 28-29, Plaintiff began experiencing excruciating pain where he had strained his bicep the weekend prior.

52.     At the conclusion of Plaintiff's shift, Plaintiff notified his Safety Officer, Patricia LNU, that his right arm was in severe pain.  Patricia notified Mr. Maddox-Lee, who completed another injury report.   Mr. Reed also completed an injury report.

53.     Then, Steve Bartozzi, Production Manager of the Wapakoneta, Ohio plant, instructed Plaintiff to drive back to Ohio immediately.

54.     Plaintiff was instructed to drive to meet Safety Officer, Jason Bowers, at Joint Township District Memorial Hospital—part of Grand Lake Health System in St. Marys, Ohio.

55.     Plaintiff drove back to his home and picked up his fiancé.  He and his fiancé met Mr. Bowers at the hospital as instructed.

56.     Plaintiff was examined in the Emergency Department upon his arrival.

57.     Plaintiff inquired as to what steps he needed to take to ensure that his injury and costs of medical care would be covered by Worker's Compensation.

58.     Mr. Bowers ensured Plaintiff that it would be covered, and that Mr. Bowers would handle all of the paperwork.

59.     Mr. Bowers accompanied Plaintiff during his examination and joined Plaintiff during his discussion with the attending provider, Kevin Fox, MD.

60.     Dr. Fox ordered an X-ray of Plaintiff's arm.  The X-ray showed that Plaintiff did not sustain a fracture or dislocation.

61.     Mr. Bowers asked Dr. Fox to advise that Plaintiff could return to work with no restrictions.   Dr. Fox indicated that Plaintiff needed further examination by an orthopedic doctor. Plaintiff and his fiancé returned home after the appointment.

62.     The following day, Plaintiff reported to the Wapakoneta, Ohio paper mill where he met Mr. Bowers.

63.     Mr. Bowers drove Plaintiff to the Occupational Health office at Joint Township District Memorial Hospital.  Plaintiff and Mr. Bowers met with Dr. Torres.

64.     Dr. Torres conducted a brief examination of Plaintiff and noted that Plaintiff had limited use of his arm.  Dr. Torres indicated that Plaintiff could not perform his normal job functions at that time.

65.     Mr. Bowers requested that Dr. Torres release Plaintiff to return to work with no restrictions.  Mr. Bowers explained that the company wanted to avoid a Workers' Compensation claim if possible, so Mr. Bowers requested that Dr. Torres release Plaintiff at that time.

66.     Dr. Torres refused, and instead, stated that Plaintiff could return to work on light duty until further evaluation.

67.     Dr. Torres referred Plaintiff to Orthopaedic Institute of Ohio ("OIO") for further examination and an MRI.  Plaintiff made an appointment with OIO for the following day, January 31, 2019.

68.     Plaintiff and Mr. Bowers then returned to the Wapakoneta, Ohio plant.  Plaintiff was told that he would be placed on light duty for now.

69.     Later that afternoon, Mr. Bowers approached Plaintiff and informed him that Mr. Bowers had spoken with the Occupational Health office and that they agreed to revise Plaintiff's record to indicate that Plaintiff could return to work without restrictions.

70.     Mr. Bowers explained to Plaintiff that Defendants did not want to have to deal with a Workers' Compensation claim, so Mr. Bowers needed to arrange for Plaintiff to return to work without formal restrictions until his injury healed.   Mr. Bowers instructed Plaintiff to pick up his updated medical record and submit it to Defendants.

71.     The next day, on or around January 31, 2019, Plaintiff—again accompanied by Mr. Bowers—attended an appointment with Physician Assistant, Mr. Warnecke and Orthopedic Surgeon, Dr. Neiman at OIO.   They suspected that Plaintiff had sustained a distal bicep tendon rupture and fitted him with a brace for his arm.  Plaintiff was also scheduled to undergo an MRI.

72.     Dr. Neiman instructed Plaintiff to return to work on light duty. Dr. Neiman instructed Plaintiff to perform office work and not to lift anything over 5 pounds.

73.     Plaintiff's MRI was scheduled for February 4, 2019.

74.     On or around February 4, 2019, Plaintiff and Mr. Bowers attended Plaintiff's appointment for his MRI.  At the appointment, Plaintiff and Mr. Bowers met with Dr. Neiman.

75.     Dr. Neiman indicated that if the MRI revealed a tear, they would schedule him for surgery.

76.     Mr. Bowers asked Dr. Neiman if he would release Plaintiff to return to work without restrictions in the meantime.  Dr. Neiman refused to do so.

77.     On or around February 5, 2019, Plaintiff and Mr. Bowers attended Plaintiff's follow-up appointment.  Dr. Neiman of OIO informed Plaintiff that the MRI demonstrated a right distal bicep strain, but no tearing.

78.     Dr. Neiman instructed Plaintiff to remain on light-duty medical restrictions for six (6) weeks to allow the injury to heal.  Dr. Neiman instructed Plaintiff to return in March 2019 for a follow-up.

79.     Plaintiff scheduled a follow-up appointment with OIO for on or around March 5, 2019.

80.     On or around February 17, 2019, Mr. Bowers informed Plaintiff that he needed to move up his appointment with OIO.  Mr. Bowers stated that Defendants needed Plaintiff to return to full-duty work as soon as possible.

81.     Plaintiff expressed hesitation about this; Plaintiff explained that he wanted to ensure he gave his bicep the proper amount of time to heal so he doesn't reinjure it.

82.     Mr. Bowers approached Plaintiff again five minutes later.  Mr. Bowers stated that he spoke with Mr. Kearsey, Plant Manager.  Mr. Kearsey demanded that Plaintiff to move up his appointment.

83.     Plaintiff, now believing he did not have an option, moved his appointment with OIO to February 19, 2019.

84.     Plaintiff and Mr. Bowers attended the appointment together on February 19, 2019 and discussed Plaintiff's recovery with Dr. Nieman.

85.     Dr. Nieman noted that Plaintiff was still experiencing some pain and that his arm was not fully healed.  Mr. Bowers explained that Defendants needed Plaintiff back at work.

86.     Dr. Nieman instructed Plaintiff that he could return to work on the mill floor, but that he should avoid any heavy lifting.  Dr. Nieman imposed a 5-pound weight restriction for the next 4 weeks and instructed Plaintiff to return for a follow-up at that time.

87.     Two days later, on or around February 21, 2019, while at work, Plaintiff was approached by Steve Bartocci, Production Manager at the Wapakoneta mill, and told that he needed to come to HR Director, Kevin Vickers' office to discuss a plan to get Plaintiff back on a shift on the mill floor.

88.     Plaintiff met with Mr. Bartocci, Ed Kearsey, and HR Director Kevin Vickers.

89.     Mr. Kersey informed Plaintiff that he was being terminated because Defendants did not think it was a "good fit."

90.     Plaintiff believed that a Workers' Compensation claim had been filed on his behalf by Mr. Bowers.  In fact, Plaintiff's medical records from OIO reference a "WC" injury.

91.     However, Plaintiff later learned that Mr. Bowers did not, in fact, file a Workers' Compensation claim on Plaintiff's behalf as he said he would.

## FIRST CAUSE OF ACTION
### FLSA Collective Action, 29 U.S.C. §201, *et seq*. - Failure to Pay Overtime

92.     All of the preceding paragraphs are realleged as if fully rewritten herein.

93.    Plaintiff bring this FLSA claim pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of himself and all other Similarly Situated Persons ("SSPs") of the opt-in class, which includes:

>    All current and former Production Engineers employed by Defendants during the 3 years prior to the date of filing this Complaint, who were paid on an hourly basis, who attended training, and did not receive overtime payment at a rate of one and one-half times their regular rate of pay for all hours worked in a workweek in excess of 40, including time spent completing mandatory training homework.

94.    Upon information and belief, in the three years prior to the date of filing this Complaint, Defendants have employed more than 250 Production Engineers between all paper mills.  These other Production Engineers are similarly situated to Plaintiff and are referred to herein as Similarly Situated Persons or "SSPs".

95.    This action is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation withheld in violation of the FLSA.  Plaintiff is representative of all Production Engineers employed by Defendants at all of Defendants' paper mills, and he is acting on behalf of their interests as well as his own in bringing this action.

96.    The SSPs are known to Defendants and are readily identifiable through Defendants' payroll records.  These individuals may readily be notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, interest, attorneys' fees and costs under the FLSA.

97.    Plaintiff and the SSPs are paid on an hourly basis.

98.    Plaintiff and the SSPs are not exempt from the overtime requirements of the FLSA.

99.    Plaintiff and the SSPs were not paid an overtime premium for all hours worked over 40 in a workweek.

12

100.    Defendants were aware that Plaintiff and the SSPs regularly worked more than 40 hours per week, but were not receiving overtime compensation at a rate of one and one-half times their regular rate of pay for hours worked in excess of 40 per week.

101.    Defendants knew or should have known that it was required to pay Plaintiff and the SSPs at an overtime premium for all hours worked in a workweek in excess of 40, including time spent completing mandatory homework.

102.    Defendants instructed Plaintiff and the SSPs to indicate that they had only worked 40 hours per week on their time sheets in order to avoid paying Plaintiff and the SSPs the overtime compensation they were owed.

103.    Accordingly, Plaintiff and the SSPs were forced to work more than 40 hours per week without proper overtime compensation.  As a result, Plaintiff and the SSPs have been damaged.

**SECOND CAUSE OF ACTION**
**Workers' Compensation Retaliation – O.R.C. § 4123.90**
**(FOR PLAINTIFF BRZOZOWSKI ONLY)**

104.    All of the preceding paragraphs are realleged as if fully rewritten herein.

105.    Plaintiff Brzozowski was injured and/or suffered an occupational injury during his employment with Defendants.

106.    Plaintiff Brzozowski filed and/or instituted and/or pursued a claim under the Workers' Compensation Act.

107.    Defendants discharged Plaintiff Brzozowski in contravention of R.C. § 4123.90.

108.    Within the ninety days following Plaintiff Brzozowski's discharge, Defendants received written notice that Plaintiff claimed his discharge was a violation of R.C. § 4123.90.

109.    As a result of Defendants' violation of R.C. § 4123.90, Plaintiff is entitled to all relief afforded under R.C. § 4123.90, including reinstatement with back pay, and/or lost wages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and similarly situated individuals are entitled to and pray for the following relief:

A.  Designation of this action as a collective action pursuant to the FLSA on behalf of the collective action members and prompt issuance of notice to all similarly situated members of the proposed opt-in class, notifying them of this action, and permitting them to assert their timely claims for overtime payment in this action;

B.  A declaratory judgment that Defendants' practices complained of herein are unlawful under the FLSA;

C.  An injunction against Defendants from engaging in each of the unlawful practices, policies, and patters set forth herein;

D.  An award of unpaid overtime wages due under the FLSA,;

E.  An award of liquidated damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

F.  An award of prejudgment and post judgment interest;

G.  An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees;

H.  For Plaintiff Brzozowski only on Count II, reinstatement with back pay, and/or lost wages, and attorneys' fees and costs.

I.  Such other legal and equitable relief as this Court deems appropriate.

14

Respectfully submitted,

/s/ *Greg R. Mansell*
Greg R. Mansell (0085197)
(Greg@MansellLawLLC.com*)*
Carrie J. Dyer (0090539)
(Carrie@MansellLawLLC.com)
Kyle T. Anderson (0097806)
(Kyle@MansellLawLLC.com)
**Mansell Law, LLC**
1457 S. High St.
Columbus, OH 43207
Ph: 614-610-4134
Fax: 614-547-3614
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiffs hereby requests a jury of at least eight (8) person

/s/ *Greg R. Mansell*
Greg R. Mansell (0085197)

15